ANNETTE BARRETTA *v.* OTIS ELEVATOR
COMPANY ET AL.
(SC 15516)

Borden, Berdon, Norcott, Palmer and Peters, Js.

Argued March 26—officially released July 29, 1997

*Beverly S. Knapp*, with whom was *L. Douglas Shrader*, for the appellant (named defendant).

*Bernadette M. Keyes*, with whom was *Thomas F. Keyes, Jr.*, for the appellee (substitute plaintiff).

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether, under the facts of this case, the plaintiff,

Annette Barretta, was entitled to a jury instruction on the doctrine of res ipsa loquitur in her negligence action against the named defendant, Otis Elevator Company.[1] The trial court declined the plaintiff's request to charge on that doctrine, and the Appellate Court reversed, holding that the plaintiff was entitled to such a charge. *Barretta* v. *Otis Elevator Co.*, 41 Conn. App. 856, 861, 677 A.2d 979 (1996). The defendant appeals from the judgment of the Appellate Court following our grant of certification.[2] The defendant claims that the Appellate Court improperly concluded that the doctrine of res ipsa loquitur applies in this case. We agree. We conclude that the evidence was insufficient to support a charge on the doctrine of res ipsa loquitur and, accordingly, we reverse the judgment of the Appellate Court.

Whether the doctrine of res ipsa loquitur applies in a particular case is a question of law over which our review is plenary. *Giles* v. *New Haven*, 228 Conn. 441, 447, 636 A.2d 1335 (1994). In this regard, we note that a trial court should instruct the jury in accordance with a party's request to charge if the proposed instructions are " 'reasonably supported by the evidence.' " *Goodmaster* v. *Houser*, 225 Conn. 637, 648, 625 A.2d 1366 (1993). We therefore review the evidence presented

---

[1] "Annette Barretta initially commenced this action to recover damages against Milford Jai Alai, Inc., and Otis Elevator Company. On May 8, 1993, Barretta died from causes unrelated to the injuries she suffered in the fall at issue. Thereafter, the action continued with her executor, Giacomo Barretta, as substitute plaintiff. On July 20, 1994, the action was withdrawn as against Milford Jai Alai, Inc., and the case proceeded to trial on an amended complaint solely against Otis Elevator Company." *Barretta* v. *Otis Elevator Co.*, 41 Conn. App. 856, 857 n.1, 677 A.2d 979 (1996). Hereafter, we refer to Annette Barretta as the plaintiff and Otis Elevator Company as the defendant.

[2] We granted the defendant's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the judgment must be reversed because of the failure of the trial court to charge on the doctrine of res ipsa loquitur?" *Barretta* v. *Otis Elevator Co.*, 239 Conn. 909, 682 A.2d 997 (1996).

at trial in the light most favorable to supporting the plaintiff's proposed charge.

The jury could have reasonably found the following facts, as stated by the Appellate Court. "On the evening of August 24, 1990, Barretta and her husband went to Milford Jai Alai with another couple. During the evening, Barretta and the other woman went downstairs to purchase ice cream. To return to their seats on the upper level, they stepped onto the ascending escalator, with the other woman in the lead. The escalator came to a sudden stop and Barretta fell, sustaining injuries." *Barretta* v. *Otis Elevator Co.*, supra, 41 Conn. App. 857.

The plaintiff brought this action against the defendant claiming negligent maintenance of the escalator. After the close of evidence, "[t]he plaintiff requested a charge on the doctrine of res ipsa loquitur. The trial court declined to charge on the doctrine. Interrogatories were submitted to the jury, the first two of which inquired whether the plaintiff had proven that the escalator was defective and whether the defendant was negligent as alleged. . . . The jury answered that the escalator had not been proven defective and that the defendant had not been proven negligent, and, therefore, it returned a verdict for the defendant." Id., 857–58. The trial court rendered judgment for the defendant based on the jury's verdict.

On the plaintiff's appeal, the Appellate Court reversed the judgment of the trial court and ordered a new trial. The Appellate Court determined that the plaintiff was entitled to an instruction on the doctrine of res ipsa loquitur, based entirely on its conclusion that "[o]rdinarily, an escalator does not suddenly stop while people are riding on it unless someone has been negligent." Id., 859. Because we conclude that in this case the plaintiff's own evidence precluded the inference that the escalator would not have stopped but for someone's

negligence, we conclude that an instruction on res ipsa loquitur was not warranted.

"The doctrine of res ipsa loquitur, literally 'the thing speaks for itself,' permits a jury to infer negligence when no direct evidence of negligence has been introduced. . . . '[T]he doctrine of res ipsa loquitur is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, *in some cases*, sustain the burden of proving that the defendant was more probably negligent than not, by showing *how* the accident occurred, without offering any evidence to show *why* it occurred.' *Schurgast* v. *Schumann*, 156 Conn. 471, 479, 242 A.2d 695 (1968). . . . 'The result is simply that such proof, without proof of further facts tending to show negligence, satisfies the plaintiff's duty of producing evidence sufficient to permit the trier, whether court or jury, to draw an inference of negligence. *Ruerat* v. *Stevens*, 113 Conn. 333, 337, 155 A. 219 [1931]. The doctrine permits, but does not compel, such an inference. *Fogarty* v. *M. J. Beuchler & Son, Inc.*, 124 Conn. 325, 330, 199 A. 550 [1938]. The doctrine has no evidential force, does not shift the burden of proof and does not give rise to a presumption. *Ryan* v. *George L. Lilley Co.*, 121 Conn. 26, 30, 183 A. 2 [1936]. It is but a specific application of the general principle that negligence can be proved by circumstantial evidence.' *Lowman* v. *Housing Authority*, 150 Conn. 665, 670, 192 A.2d 883 (1963); see generally W. Prosser & W.P. Keeton, Torts (5th Ed. 1984) § 349; F. Harper, F. James & O. Gray, Torts (1986) §§ 19.5 through 19.12." (Citation omitted; emphasis added.) *Malvicini* v. *Stratfield Motor Hotel, Inc.*, 206 Conn. 439, 441–43, 538 A.2d 690 (1988).

The doctrine of res ipsa loquitur applies only when two prerequisites are satisfied. First, the situation, condition or apparatus causing the injury must be such that in the ordinary course of events no injury would

have occurred unless someone had been negligent. Second, at the time of the injury, both inspection and operation must have been in the control of the party charged with neglect.[3] *Giles* v. *New Haven*, supra, 228 Conn. 446. When both of these prerequisites are satisfied, a fact finder properly may conclude that it is more likely than not that the injury in question was caused by the defendant's negligence.

In this case, the plaintiff's claim founders on the first prerequisite.[4] At trial, the only evidence presented by the plaintiff in support of her negligence claim, aside from general testimony as to the factual circumstances surrounding her fall, was the testimony of Michael Shanok, a registered professional engineer and an expert in "the general field of safety." Shanok testified that the escalator had been designed and installed correctly, and that he had no evidence or reason to believe that the defendant had been negligent in inspecting or maintaining the escalator. Shanok then testified that "in all probability" the escalator in this case stopped for one of two reasons. First, the vibration caused by the normal

[3] Until recently, our jurisprudence also required that " '[t]he injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.' " *Malvicini* v. *Stratfield Motor Hotel, Inc.*, supra, 206 Conn. 443. In *Giles* v. *New Haven*, supra, 228 Conn. 455, however, we decided, in light of General Statutes § 52-572h, that the doctrine of res ipsa loquitur can still apply even when the plaintiff's own negligence may also have contributed to the injury, and that, in such a case, the jury should be instructed in accordance with general comparative negligence principles.

The plaintiff claims that the trial court improperly denied her request for an instruction on res ipsa loquitur based on that court's belief that the doctrine is inapplicable when the evidence indicates that the plaintiff may have been contributorily negligent. We need not discuss the specific basis on which the trial court denied the plaintiff's request to charge, however, in light of our conclusion that the plaintiff otherwise failed to bring her claim within the doctrine.

[4] At oral argument, the defendant conceded that the second element, namely, that the defendant had exclusive control over the escalator, was satisfied in this case.

operation of the escalator could have "jiggle[d]" a wire loose and then back into place. Second, the escalator could simply have been afflicted by a "gremlin," a generic term for a minor malfunction that disrupts the operation of a mechanical system and that can be very difficult to trace. As the plaintiff conceded at oral argument, however, Shanok never testified that a "jiggle[d]" wire or a "gremlin" either could, would or should have been discovered by the defendant in the course of a safety inspection or reasonable maintenance of the escalator.[5] Indeed, Shanok never testified that negligence on the defendant's part played *any* role in causing the escalator to stop.[6]

We therefore are not persuaded that, in the ordinary course of events, this escalator would not have stopped but for negligent inspection or maintenance by the defendant. We do not dispute that the very purpose of the doctrine of res ipsa loquitur is to allow the fact finder, under appropriate circumstances, to find that a defendant has been negligent even in the absence of *specific* proof of negligence. See *Malvicini* v. *Stratfield Motor Hotel, Inc.*, supra, 206 Conn. 442. The doctrine is designed, however, to cover those situations in which

---

[5] Although the plaintiff specifically asked Shanok whether "a reasonable inspection" would have disclosed a problem with the escalator, the question was withdrawn after the defendant had objected.

[6] Shanok also testified that escalators are *specifically designed* to stop suddenly when certain safety features are activated. For example, a button and a key switch are located at the top and the bottom of every escalator so that the escalator may be stopped manually. There are also several devices that will stop an escalator when the escalator detects that something is wrong, such as if a step becomes jammed or if something pushes with sufficient force against the side of the escalator. Based on the facts in the record, however, Shanok ruled out those as causes of the stoppage in this case, and testified that it was "far more probable" that the escalator stopped because of a gremlin or a jiggled wire rather than because one of these safety devices had been activated. Moreover, the plaintiff does not claim that a stoppage of the escalator caused by the activation of such a safety feature could serve as the basis of a res ipsa loquitur instruction in this case.

the plaintiff, even if unable to prove *specific* acts of negligence, is able to produce evidence that the accident at issue is of a type that would not ordinarily have occurred without *some*, albeit unspecified, carelessness by the defendant. The doctrine of res ipsa loquitur does not extend to situations in which the plaintiff's *own* evidence provides *no* basis on which to conclude that the defendant has been negligent and, in fact, suggests as the only possible causes of the accident factual scenarios that do not arise from the defendant's negligence.

We disagree, therefore, with the Appellate Court's conclusion that the plaintiff satisfied the first prerequisite for a res ipsa loquitur instruction. We need not decide whether, in general, the Appellate Court's statement that "[o]rdinarily, an escalator does not suddenly stop while people are riding on it unless someone has been negligent"; *Barretta* v. *Otis Elevator Co.*, supra, 41 Conn. App. 859; is correct for purposes of the doctrine, because such a general statement of common experience does not survive specific proof to the contrary. In this case, the testimony of the plaintiff's expert, which was the only causation evidence presented at trial, specifically indicated that, in general, escalators such as the defendant's may stop for reasons unrelated to anyone's negligence, failed to establish any possibility that the plaintiff's injuries were caused by the defendant's negligence, and specifically indicated that the escalator stopped for reasons completely divorced from any negligence on the defendant's part. Thus, "[w]hatever a layperson may infer from 'everyday experience' has . . . been overcome by the more particularized and informed knowledge on [escalator] operation presented" at trial. *Bell* v. *May Dept. Stores Co.*, 866 F.2d 452, 458 (D.C. Cir. 1989);[7] cf. *Malvicini* v. *Stratfield*

---

[7] In *Bell* v. *May Dept. Stores Co.*, supra, 866 F.2d 453, the plaintiff brought an action for damages after she "was caught between two elevator doors as she attempted to enter an automatic elevator operated and maintained" by the defendant department store. The plaintiff introduced no direct evi-

*Motor Hotel, Inc.*, supra, 206 Conn. 444 ("as a matter of common experience, it can be said that a shower does not ordinarily turn suddenly hot in the absence of negligence" where no evidence contradicting this supposition is submitted). When, as in the present case, evidence on the question of causation is presented at trial, and *all* such evidence affirmatively indicates that

dence of negligence, but instead relied on the doctrine of res ipsa loquitur and the general concept, derived from everyday experience, that the elevator doors would not have closed on her in the absence of negligent maintenance by the defendant. Id., 454. The jury returned a verdict for the plaintiff. Id., 455. The Court of Appeals reversed, holding that an instruction on res ipsa loquitur had been inappropriate. Id., 458. As in the present case, the plaintiff in *Bell* "did not produce any evidence tending to show that the inspection and maintenance program employed by [the defendant] was either inadequate . . . or improperly executed." Id., 454. The defendant, on the other hand, had introduced uncontroverted testimony "identif[ying] a variety of factors" outside the control of the defendant, such as abuse by other patrons, which might have caused the elevator to malfunction. Id. Under these circumstances, the Court of Appeals concluded that the plaintiff had failed to bring her claim within the doctrine of res ipsa loquitur. Id., 458.

In *Barwick* v. *United States*, 923 F.2d 885, 886 (D.C. Cir. 1991), the plaintiff brought an action against the defendant elevator manufacturer for its allegedly negligent maintenance after he was trapped for two hours in an elevator car that had "stopped between the third and fourth floors, jerked as if it were going up, and stopped again." The plaintiff's expert essentially testified that there were two realistic explanations for the elevator stoppage. The first possibility was that there had been a momentary sag in electrical power throughout the building, in which case it was undisputed at trial that the defendant could not be held responsible. Id., 887. This possibility was somewhat undermined, however, by the fact that none of the other elevators in the building malfunctioned at the same time. The second possibility was that two electrical contacts in the elevator's control system had burned out. Id. The expert testified that even if the burnout explanation were correct, however, he could not determine whether this malfunction was caused by the defendant's negligent maintenance or by causes outside the defendant's control, because the defendant had failed to keep complete records of its maintenance of the elevator in question. Id., 888. The District Court instructed the jury on the doctrine of res ipsa loquitur, and the jury returned a verdict for the plaintiff. Id., 886. On the defendant's appeal, the Court of Appeals affirmed the verdict. The Court of Appeals concluded that the doctrine of res ipsa loquitur applied because the testimony of the plaintiff's expert was such that, if believed, a reasonable jury could conclude that the elevator malfunction was probably caused by the defendant's negligence. Id., 889.

the accident in question *would,* in fact, have happened in the absence of anyone's negligence, an instruction on the doctrine of res ipsa loquitur is inappropriate.[8] Cf. *Giles* v. *New Haven,* supra, 228 Conn. 443–44; W. Prosser & W. Keeton, supra, § 40, p. 261 (defendant entitled to directed verdict in res ipsa loquitur case "[i]f the defendant shows definitely that the occurrence . . . was of a kind which commonly occurs without negligence on the part of anyone, or that it could not have been avoided by the exercise of all reasonable care, [because on such a showing] the inference of negligence is no longer permissible").

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion NORCOTT, PALMER and PETERS, Js., concurred.

---

[8] The plaintiff's reliance on *Giles* v. *New Haven,* supra, 228 Conn. 441, is misplaced. *Giles* involved a plaintiff who had been injured when the "compensation chain" of the elevator in which she had been riding "became hooked on a rail bracket located on the wall of the elevator shaft" causing the elevator to shudder and shake. Id., 444. In *Giles,* however, both parties stipulated that the accident in question would not have occurred if someone had not been negligent. Id., 447. The sole issue was whether the defendant had sufficient control over the elevator to warrant an instruction on the doctrine of res ipsa loquitur. Id. The issue in *Giles* was thus different from the issue before us in the present case.

Furthermore, there was evidence in *Giles,* wholly lacking in the present case, from which the jury reasonably could have inferred that some degree of failure to maintain the chain caused the elevator to stop. "William Hendry, the defendant's district maintenance supervisor, testified . . . that the elevators were routinely inspected, but that neither inspection nor testing of the compensation chain was part of that routine inspection. . . . Hendry testified that the normal sway of a compensation chain is approximately one to two inches, and in order for a chain to get hooked on a rail bracket it must sway at least eighteen inches. He further testified that for the chain to sway eighteen inches there must have been some misoperation of the elevator . . . . He had never before seen a compensation chain pulled free of an elevator cab in his thirty-seven years of employment by the defendant." (Internal quotation marks omitted.) Id., 445.

BERDON, J., dissenting. This case, in which an escalator came to a sudden stop causing a passenger to fall and sustain injuries, presents a classic example of the type of case to which the doctrine of res ipsa loquitur ("the thing speaks for itself") has commonly been applied. Accidents involving elevators and escalators have consistently been identified as appropriate for application of the doctrine, because they are accidents for which direct evidence of negligence is frequently unavailable, but that, based upon common experience, would not ordinarily occur in the absence of negligence. See *Barwick* v. *United States*, 923 F.2d 885 (D.C. Cir. 1991); *Colmenares Vivas* v. *Sun Alliance Ins. Co.*, 807 F.2d 1102 (1st Cir. 1986); *Ebanks* v. *New York City Transit Authority*, 70 N.Y.2d 621, 512 N.E.2d 297, 518 N.Y.S.2d 776 (1987); see also 19 Am. Jur. 3d Proof of Facts 43, § 21 (1993); 4 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 19.6, pp. 33–36 n.13.

Nevertheless, the majority finds application of the doctrine to be precluded in this case merely because an expert witness produced by the plaintiff testified that, although he was not permitted to inspect the escalator involved until nearly five years after the accident occurred, he found the escalator to have been installed properly and to be free of design defects, and that he did not know what caused the escalator to stop suddenly. Notwithstanding this testimony, the trial court should have instructed the jury on the doctrine of res ipsa loquitur in accordance with the plaintiff's request to charge.

In *Giles* v. *New Haven*, 228 Conn. 441, 636 A.2d 1335 (1994), this court reviewed the circumstances that must exist in order to entitle a plaintiff to a jury instruction on the doctrine of res ipsa loquitur. Traditionally, application of the doctrine required that three conditions be satisfied: "(1) [t]he situation, condition, or apparatus causing the injury must be such that in the ordinary

course of events no injury would result unless from a careless construction, inspection or user[;] (2) [b]oth inspection and user must have been at the time of the injury in the control of the party charged with neglect[;] [and] (3) [t]he injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." (Internal quotation marks omitted.) Id., 446. In *Giles*, this court modified the parameters of the second and third conditions, but did not have the occasion to review the first condition because the parties agreed that it had been satisfied.

In *Giles*, we expanded the second and third prongs of the doctrine of res ipsa loquitur. With regard to the second prong, we recognized that exclusive control was not necessary as long as "the jury could reasonably find that the defendant's control was sufficient to warrant an inference that the defendant was more likely responsible for the incident than someone else . . . ." Id., 450. With regard to the third prong, we held that contributory negligence on the part of the plaintiff would not bar the application of the doctrine. Despite these modifications of the doctrine, which were intended to bring the doctrine of res ipsa loquitur into the twenty-first century, the majority narrowly construes the first prong in this case and, in doing so, ignores our precedent and its logical extension.

The majority concludes that the trial court's refusal to instruct the jury on the doctrine of res ipsa loquitur was appropriate because, in its view, the first condition had not been satisfied due to the plaintiff's failure to produce evidence that the accident was of the sort that ordinarily would not occur in the absence of negligence. In order to satisfy the first condition, however, it is not necessary that any evidence whatsoever be produced to establish the latter proposition. Instead, the condition is intended to draw upon ordinary past experience. "Where common experience has demonstrated that no

injury would ordinarily result from a situation, condition or apparatus unless there was careless construction, inspection or user . . . common sense permits an inference of negligence from proof of the injury and the physical agency inflicting it . . . ." *Lowman* v. *Housing Authority,* 150 Conn. 665, 670, 192 A.2d 883 (1963).

Whether application of the doctrine of res ipsa loquitur is appropriate under given circumstances is a question of law. *Giles* v. *New Haven,* supra, 228 Conn. 447. Yet, in making that decision, courts are not without guidance. Where the balance is a close one, this court's decision in *Motiejaitis* v. *Johnson,* 117 Conn. 631, 169 A. 606 (1933), is instructive. In *Motiejaitis,* this court stated that, "[i]f, upon the evidence, reasonable [persons] might disagree as to whether or not the conditions upon which the application of the doctrine depends were present in the case, it must be submitted to the jury. . . . If they find that the conditions do exist but no definite cause or causes of the accident are proven, it is for them to determine whether, in view of the circumstances of the accident including those involved in the application of the doctrine and all the relevant facts, it is more probable than not that the injury was due to the negligence of the defendant." Id., 635; see also 2 Restatement (Second), Torts § 328D (1965) (while "[i]t is the function of the court to determine whether the inference may reasonably be drawn by the jury . . . [i]t is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached").

Where evidence is introduced to rebut the inference of negligence, application of the doctrine is not necessarily precluded. "When the defendant . . . offers evidence that the event was not due to his negligence, the inference which arises . . . is not necessarily overthrown." 2 Restatement (Second), supra, § 328D, com-

ment (n). "The inference of negligence remains in the case and will sustain a finding of negligence, even though there be countervailing evidence, unless such adverse evidence so conclusively shows nonnegligence of the defendant that reasonable minds, acting fairly, could not find [the defendant] negligent." *Witort* v. *United States Rubber Co.*, 3 Conn. Cir. Ct. 690, 695–96 (1966). In other words, the evidence should be of such a character as to undermine the inference on which the doctrine of res ipsa loquitur is based.[1] If the evidence is not of such a character, the case should go to the jury, with the benefit of the res ipsa loquitur instruction, for the jury to decide in light of the evidence whether to draw the inference. This result is consistent with *Motiejaitis.*

Indeed, this approach to conflicting evidence and inferences has been applied to situations in which the plaintiff introduced expert testimony. "[I]t is quite generally agreed that the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence, does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 40, p. 260; see also *Kranda* v. *Houser-Norborg Medical Corp.*, 419 N.E.2d 1024, 1042 (Ind. App. 1981); *Mobil Chemical Co.* v. *Bell,* 517 S.W.2d 245, 254–55 (Tex. 1974). Furthermore, "the

---

[1] In *Malvicini* v. *Stratfield Motor Hotel, Inc.*, 206 Conn. 439, 443–44, 538 A.2d 690 (1988), the defendants argued "that the weight of the evidence contradicting the plaintiff's claims rebuts this first condition and precludes the invocation of res ipsa loquitur." This court, however, held that because "[the defendant's] argument . . . is actually an attack upon the plaintiff's version of the incident, and does not relate to whether, as a matter of common experience, it can be said that a shower does not ordinarily turn suddenly hot in the absence of negligence," the first condition for the application of res ipsa loquitur had not been satisfied. Id., 444.

plaintiff does not lose [the doctrine's] benefits by introducing some evidence of specific negligence which does not establish clearly and definitely the precise cause of the injury, or, as it is sometimes more concisely phrased, that the plaintiff's unsuccessful attempt to prove specific negligence will not deprive him of the inferences or presumptions otherwise available under res ipsa loquitur." Annot., 33 A.L.R.2d 791, 795 (1954). In other words, only when the evidence makes the inference unreasonable is the inference logically precluded.

In the present case, the majority finds application of the doctrine to be inappropriate because the plaintiff produced no direct evidence of negligence, but produced some evidence tending to rebut the inference of negligence. Specifically, the majority claims that the plaintiff was not entitled to the instruction because the plaintiff's own expert, Michael Shanok, an engineer, testified on direct examination that his inspection revealed that the escalator had been installed properly and was free of design defects, and testified on cross-examination that the escalator had stopped because of a jiggled wire or a "gremlin" in the system. The majority concludes that, in light of that testimony, the inference of negligence could not survive. In my view, that conclusion is inappropriate in light of the evidence presented.

Shanok testified that "[i]n my opinion, it is far more probable that the escalator was not caused to stop by someone else, but the escalator stopped on its own for no outward reason . . . ." He further testified that his inspection of the escalator, nearly five years after the accident occurred, revealed no malfunctioning parts or defects. He stated that his findings were "that the escalator appeared to have been installed properly" and that "[t]he design was correct." Following his inspection, Shanok formed an opinion as to what might have caused the accident. He stated that there remained "only the safety interlock devices as a possible reason-

able cause of an escalator stopping for no apparent reason." Specifically, Shanok stated that "[i]t's my opinion that in all probability either one of these interlock devices malfunctioned, or there was a loose wire attached to any one of the electrical devices in the control circuit that came loose from vibration." When asked to identify the cause of the accident more specifically, Shanok answered that "[t]here is no way of knowing because after the . . . incident the wrong escalator was inspected [by the defendant or its agent] so that the evidence was gone." When asked to explain his opinion as to a loose wire possibly having caused the accident, Shanok replied, "I have no idea if that happened. There is no way of knowing."

On cross-examination, Shanok was questioned about his responses given during a deposition regarding the cause of the accident. Defense counsel asked Shanok if he remembered "giving this answer . . . when asked about what caused the escalator to stop: 'There are a number of different things on an escalator that can stop it. And it could be any one of them. It would be conjecture to say that one or the other was at fault.' Do you remember giving that answer?" Shanok replied, "[t]hat's correct." He also testified that he remembered stating during the deposition that a possible cause of the accident could have been a "gremlin" in the escalator system. Finally, when asked if he remembered being asked in the deposition about whether in his opinion the defendant had been negligent in its maintenance of the escalator, Shanok responded that he remembered that his reply to the question was that "[t]here is in terms of what caused this incident, it is unfound and untraceable."

In my view, Shanok's testimony is not of a character that should preclude application of the doctrine of res ipsa loquitur. The evidence is not such that, as a matter of law, it must be said that a reasonable person could

not conclude, in light of the evidence, that an inference of negligence drawn from the circumstances of the accident has been foreclosed. First, the evidence did not demonstrate that a factor other than negligence caused the accident at issue here to occur. Second, the evidence produced was speculative and inconclusive, and is best summed up in Shanok's own words: "There is no way of knowing." The fact is that Shanok was not provided with an opportunity to examine the escalator until five years after the accident occurred. His testimony consisted of hypothetical commentary about what might have caused the accident. Shanok admitted that he did not know what caused the accident. He did not conclusively rule out negligence as the cause of the accident, but, rather, speculated that in all probability the accident was caused by either a loose wire or a "gremlin" in the escalator's electrical system. Shanok did not testify that in the past accidents of the type at issue here have occurred in the absence of negligence. The plaintiff is not required to eliminate with certainty all other possible causes or inferences. " 'It is enough that the facts proved reasonably permit the conclusion that [the defendant's] negligence is the more probable explanation.' " *Giles* v. *New Haven*, supra, 228 Conn. 448.

Furthermore, the possible causes that Shanok identified for the escalator's sudden stop were not of a sort that ordinarily would occur even if all reasonable precautions had been taken. With respect to the possibility that a loose wire had caused the accident, Shanok explained that sometimes a wire within the electrical system could be jiggled loose, causing it temporarily to lose contact, and thereby cause the escalator to stop. The second possible cause that he identified was a "gremlin" in the system, that being something that goes wrong that is difficult to trace. Even if Shanok were correct, he did not testify that the defendant could not have prevented these conditions. The majority, how-

ever, with no basis in the evidence, speculates that this is the case.

I would hold that the plaintiff was entitled to a jury instruction on the doctrine of res ipsa loquitur and I would affirm the judgment of the Appellate Court that the plaintiff was entitled to a new trial.

Accordingly, I dissent.