### JOHN MALVICINI v. STRATFIELD MOTOR HOTEL, INC., ET AL. (13094)

HEALEY, SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued December 4, 1987—decision released March 8, 1988

*Raymond F. Ross,* for the appellant (plaintiff).

*Peter J. Dauk,* with whom, on the brief, were *Lesley Torsiello* and *Sheila Tierney,* for the appellee (named defendant).

ARTHUR H. HEALEY, J. The plaintiff, John Malvicini, appeals from a judgment in favor of the defendants, Stratfield Motor Hotel, Inc., and United National Cor-

poration, in an action for personal injuries allegedly suffered by the plaintiff when the water in the defendants' shower suddenly turned hot. The sole issue in this appeal is whether the trial court committed reversible error when it refused to charge the jury, as requested by the plaintiff, with respect to the doctrine of res ipsa loquitur.

The jury could reasonably have found the following facts. The plaintiff checked into the defendant Stratfield Motor Hotel, Inc., on July 6, 1977, at about 9 p.m. Before retiring that night, he took a shower. The shower was in a tub enclosed with a glass or plastic door. He awakened the next day, went into the bathroom, turned on the shower and "regulated" or "adjusted" the water. He then went to the toilet. A minute or two after he had first turned on the water he got into the shower. It is his standard procedure "all the time" to turn on the shower, adjust it, feel the water and then get in. Once he got into the shower, he did not make any adjustment to the knobs at all. At that time, the water was "pleasant," he "soaped up," and after "about a minute or two" he heard a "pssst" sound and he was hit with steaming hot water. He fell at least twice in the tub, hitting various parts of his body. Thereafter, having apparently opened the shower door, he found himself on the floor of the bathroom. There was a hole in the shower door and the plaintiff had "all kinds of chips on [himself]."

The plaintiff alleged that he had received first degree burns on his chest and neck, a concussion and three herniated discs. He also testified on direct examination that "there were no strips, no skid strips, no mat, no nothing," just a shower and bathtub that was enclosed in glass on the morning of his alleged accident. On cross-examination, he testified that the night before, when he had taken his shower, there had been no skid

mat on the floor and that there had been no skid strips in the tub, "but there was no problem."

The defendants' front office manager, Agnes Lowery, who was on duty at the desk when the plaintiff checked out, testified that after he complained about the general quality of the bathroom, she immediately went up to the plaintiff's room with one of her fellow workers[1] and "tried everything and everything worked." The manager "turned on all the faucets [herself]," including checking the water in the shower room which she found "normal." She also said that at that time she "definitely" had observed safety strips in the tub where the shower was located. She said that "is one of the things we always looked for every morning." Lowery further said that the defendants had been in the process of renovating the hotel in connection with a sale, that in the renovation all the strips had been replaced "and [that] section had just been opened shortly before [the plaintiff] came to us."

The jury found for the defendants and the plaintiff appealed, claiming that the trial court erred in refusing to charge the jury on the doctrine of res ipsa loquitur. The plaintiff filed a request to charge on res ipsa loquitur and took a timely exception. We find no error.

The doctrine of res ipsa loquitur, literally "the thing speaks for itself," permits a jury to infer negligence

---

[1] There was a conflict in the testimony about whether the plaintiff called the desk for assistance as the result of his alleged accident. He maintains that he did so. The defendants' front officer manager, Agnes Lowery, testified no such request was received. The plaintiff testified that, in response to his request for medical assistance, a bellboy came up and picked up his bag and started to leave his room. The plaintiff followed him. He also maintained that he had asked the woman on the desk, who was the front office manager, for medical help but all that she kept saying was that someone was going to have to pay for the broken door in the shower. She testified that he had never said that he had had an accident but that he had said: "Well, you have lousy bathrooms. I don't like your bathrooms. I'll never stay here again."

when no direct evidence of negligence has been introduced. This doctrine was discussed by this court in the leading case of *Stebel* v. *Connecticut Co.,* 90 Conn. 24, 26, 96 A. 171 (1915), where we held that "the doctrine of *res ipsa loquitur* is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred." *Schurgast* v. *Schumann,* 156 Conn. 471, 479, 242 A.2d 695 (1968). "Where common experience has demonstrated that no injury would ordinarily result from a situation, condition or apparatus unless there was careless construction, inspection or user, and the construction, inspection and user were all in the control of the party charged with neglect, no voluntary action of the party injured being involved, common sense permits an inference of negligence from proof of the injury and the physical agency inflicting it, without requiring proof of facts pointing to the responsible human cause. The result is simply that such proof, without proof of further facts tending to show negligence, satisfies the plaintiff's duty of producing evidence sufficient to permit the trier, whether court or jury, to draw an inference of negligence. *Ruerat* v. *Stevens,* 113 Conn. 333, 337, 155 A. 219 [1931]. The doctrine permits, but does not compel, such an inference. *Fogarty* v. *M.J. Beuchler & Son, Inc.,* 124 Conn. 325, 330, 199 A. 550 [1938]. The doctrine has no evidential force, does not shift the burden of proof and does not give rise to a presumption. *Ryan* v. *George L. Lilley Co.,* 121 Conn. 26, 30, 183 A. 2 [1936]. It is but a specific application of the general principle that negligence can be proved by circumstantial evidence." *Lowman* v. *Housing Authority,* 150 Conn. 665, 670, 192 A.2d 883 (1963); see generally W. Prosser

& W.P. Keeton, Torts (5th Ed. 1984) § 349; F. Harper, F. James & O. Gray, Torts (1986) §§ 19.5 through 19.12.

"We have frequently stated the three conditions under which the doctrine might apply: (1) The situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged with neglect. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." *Schurgast* v. *Schumann,* supra; *Briganti* v. *Connecticut Co.,* 119 Conn. 316, 320, 175 A. 679 (1934); *Stebel* v. *Connecticut Co.,* supra, 26; 4 F. Harper, F. James & O. Gray, supra. Whether the doctrine applies in a given case is a question of law for the court. See *Ryan* v. *Lilley Co.,* supra, 31; *Metz* v. *Central Illinois Electric & Gas Co.,* 32 Ill. 2d 446, 449, 207 N.E.2d 305 (1965); *Kaufman* v. *Fisher,* 230 Or. 626, 639, 371 P.2d 948 (1962); *Fleege* v. *Cimpl,* 305 N.W.2d 409, 413 (S.D. 1981).

The plaintiff pleaded and claims to have proved the conditions required for invocation of the doctrine of res ipsa loquitur. He maintains that the first condition was fulfilled because water from a shower does not ordinarily become scalding hot in the absence of someone's negligence. A number of jurisdictions agree. See, e.g., *Terrell* v. *Lincoln Motel, Inc.,* 183 N.J. Super. 55, 60, 443 A.2d 236 (1982); *Wolfe* v. *Chateau Renaissance,* 141 N.J. Super. 59, 65, 357 A.2d 282 (1976); *Watson* v. *Compagnie Generale Transatlantique,* 147 Misc. 697, 699, 264 N.Y.S. 570 (1932); *Brooks* v. *Utah Hotel Co.,* 108 Utah 220, 224, 159 P.2d 127 (1945); see generally annot., 93 A.L.R.3d 247, 279. The defendants argue that the weight of the evidence contradicting the plain-

tiff's claims rebuts this first condition and precludes the invocation of res ipsa loquitur. This argument, however, is actually an attack upon the plaintiff's version of the incident, and does not relate to whether, as a matter of common experience, it can be said that a shower does not ordinarily turn suddenly hot in the absence of negligence. We agree with the plaintiff that the first condition for the application of res ipsa loquitur is fairly met.

The third condition required in Connecticut is that the injury must have occurred irrespective of any voluntary action by the plaintiff. The defendants' brief does not contest this requirement. One noted treatise observes that "[w]hat is needed here is that [the] plaintiff's own negligence, along with that of anyone else for whom [the] defendant is not responsible, be eliminated as to the principal cause of the accident, so as to complete the basis for an inference that the negligence of which the thing speaks for itself is probably that of the defendant." 4 F. Harper, F. James & O. Gray, supra, § 19.8, p. 58. If, for example, the water in the shower had suddenly turned hot because of a defect in the boiler, shower equipment or plumbing system, such a circumstance would not have been attributable to the plaintiff's act of negligence. It is also worthy of note that in a jurisdiction that utilizes the doctrine of comparative negligence, such as Connecticut, the emerging rule is that any negligence by the plaintiff should not bar liability but should merely reduce damages. See, e.g., *Montgomery Elevator Co.* v. *Gordon,* 619 P.2d 66, 70 (Colo. 1980); *Watzig* v. *Tobin,* 292 Or. 645, 650 n.4, 642 P.2d 651 (1982); *Turtenwald* v. *Aetna Casualty & Surety Co.,* 55 Wis. 2d 659, 665, 201 N.W.2d 1 (1972). Commentators have suggested that the doctrine of res ipsa loquitur should survive under Connecticut's comparative negligence law. See G. Saden, "Comparative Negligence Adopted in Con-

necticut," 47 Conn. B.J. 416, 426 (1973); F. James, "Connecticut's Comparative Negligence Statute: An Analysis of Some Problems," 6 Conn. L. Rev. 207, 215 (1973–74).

The plaintiff's claim of the applicability of res ipsa loquitur fails, however, because it does not satisfy the requirement that the instrumentality that caused the injury be within the exclusive control of the defendants.[2] "The purpose of that condition is to exclude the possibility of an intervening act of the plaintiff or a third party which causes or contributes to produce the accident, and it undoubtedly states a necessary precaution for a sound application of the rule in most cases." *Jump* v. *Ensign-Bickford Co.,* 117 Conn. 110, 122, 167 A. 90 (1933). Our cases have said that the term " 'user' implies the idea of management and control as well as actual use." *Pollack* v. *Gampel,* 163 Conn. 462, 474, 313 A.2d 73 (1972); *Conlon* v. *G. Fox & Co.,* 165 Conn. 106, 112, 328 A.2d 708 (1973); *Bluett* v. *Eli Skating Club,* 133 Conn. 99, 103, 48 A.2d 557 (1946); see *Briganti* v. *Connecticut Co.,* supra, 321; J. Wigmore, Evidence (3d Ed. 1940) § 2509. We appreciate, on the one hand, that the "exclusive control" portion of the res ipsa loquitur formulation, if applied strictly and literally, may, in a given case, lead to placing too heavy a burden upon a plaintiff. See W. Prosser, Torts (4th Ed. 1971) § 39, pp. 219–20; 4 F. Harper, F. James &

---

[2] The plaintiff's amended complaint alleged that the defendants "owned, controlled, operated and/or maintained a hotel in the City of Bridgeport." The defendants admitted this allegation.

It also alleged seven acts of negligence against the defendants, each of which was denied.

A later paragraph of the plaintiff's amended complaint alleged: "The water heating facilities, shower facilities and plumbing facilities were within the sole and exclusive control and management of the [named] defendant, its agent and employees and said occurrence and consequent injuries would not have occurred but for the negligence of the defendants." This allegation was denied.

O. Gray, supra, § 19.7, p. 45 et seq. On the other hand, if the doctrine is loosely extended to situations where the defendant is not in exclusive control at the time of the injury, its application in such a case might impose an almost insuperable problem of rebuttal upon a defendant. This doctrine should be applied where the conditions for its applications exist and thus support the fairness of its use.

"The point of requiring control by the defendant is, as indicated by Prosser, to provide the basis for an inference that whatever negligence was involved may properly be charged to the defendant." *Hoven* v. *Kelble,* 79 Wis. 2d 444, 454, 256 N.W.2d 379 (1977); see W. Prosser, supra, § 39, pp. 219–21. For the control condition of the res ipsa loquitur doctrine to apply, the plaintiff must adduce evidence from which the court, as a matter of law, can properly determine that a jury could reasonably draw an inference that it is more probable than not that the person whose negligence caused the injury was the defendant and not some other party or agency. To do otherwise, permitting a "less-than-fair-probability" standard on control would sanction the permissibility of drawing of an "inference" of control that was not the permissible inference required and would be mere conjecture. A permissible inference rests upon premises of fact; conjecture does not. The plaintiff contends that he satisfied the control portion of the res ipsa loquitur formulation and that it was, therefore, reversible error not to have charged the jury on the doctrine. The trial court disagreed. We agree with the trial court.

There was evidence that the plaintiff adjusted or regulated the faucets on the day in question; he also had done so the night before when he had taken a shower. There was no evidence of the nature or method of operation of these faucets. There was no evidence of any mixing valve or mixing device in this shower

or the faucets. There was no evidence of the nature, method or condition of the system in this hotel that produced, heated and channeled water to showers in the rooms, including the plaintiff's room. There was mention of a boiler during Lowery's testimony. She had never seen it. She did not know how old it was. She did not know whether it was the original boiler. There was no evidence whether the boiler, assuming it heated the water for showering, had a mixing valve or any controls on it. Lowery knew nothing when asked if she knew whether any work had been performed upon this boiler during the renovations of the hotel or if anyone had checked the boiler. She did know that renovations had been going on in the hotel itself for some time prior to July 6, 1977.

Giving the evidence that arguably points to the defendant its fairest construction, we cannot say that it rises to the quality of "more probable than not" on the control condition of the doctrine to justify submitting the issue of res ipsa loquitur to the jury. We have pointed out the evidence that was introduced, as well as relevant matters on which there was no evidence. Certainly the evidence that was before the trial court was not, as it decided, such that it could properly support a jury inference that "[b]oth inspection and user must have been at the time of the injury in control of the party charged with neglect." *Schurgast* v. *Schumann,* supra.

Moreover, the trial court, in viewing all of the evidence, could not reasonably assume that the lack of evidence going to the control condition of the doctrine could be supplied by the jurors from their own experience. It is true that the trier of fact is entitled to draw all reasonable and logical inferences from the evidence. See *Hennessey* v. *Hennessey,* 145 Conn. 211, 214–15, 140 A.2d 473 (1959). "Jurors are not 'expected to lay aside matters of common knowledge or their own obser-

vation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct.' " *Frankovitch* v. *Burton,* 185 Conn. 14, 22, 440 A.2d 254 (1981), quoting *Chicago, M. & St. P. Ry. Co.* v. *Moore,* 166 F. 663, 666 (8th Cir. 1909). It has been said that a jury may consider the nature of the property involved. *Sentry Ins.* v. *Henderson,* 138 Ga. App. 495, 498, 226 S.E.2d 759 (1976). We recognize that trials do not take place in a vacuum and justice correctly relies on the common sense and common experience of jurors. See *Wood* v. *Mobil Chemical Co.,* 50 Ill. App. 3d 465, 478, 365 N.E.2d 1087 (1977). This is one factor, along with all of the other evidence, that the trial court was entitled to consider in deciding whether there was sufficient evidence on the control condition of the res ipsa loquitur formulation to permit the permissible inference to be drawn by the trier of fact. If there was sufficient evidence, it mattered not whether the trial court deemed it credible; that issue would be for the jury to decide.[3] The trial court decided, as a matter of law, that there was not sufficient evidence to require an instruction on res ipsa loquitur. We agree.

There is no error.

In this opinion the other justices concurred.

---

[3] We note that the trial court did charge the jury on the allegations of negligence in the amended complaint and that its charge also included instructions on circumstantial evidence.